This is the time set for our formal argument in the Robins v. Spokeo case on remand from the Supreme Court of the United States. Counsel for the appellant, you may proceed. Good afternoon, Your Honors. Will Contoy on behalf of Appellant Thomas Robins, with the Court's permission, I ask to reserve five minutes. Could you speak a little louder, please? Yes, Your Honor. With the Court's permission, I ask to reserve five minutes for rebuttal. No, you certainly may do so. Counsel, please watch the clock. Thank you. Your Honors, the procedural violations alleged here meet Article III's concreteness requirement for two independent reasons. First, the intangible harm the Fair Credit Reporting Act protects has a close relationship to a harm that is traditionally provided a basis for suit in American and English courts. Second, even if it does not, Congress appropriately protected by statute a modern intangible interest for which consequential harm is especially difficult to prove or measure. Why do we even have to assert? I'm sorry. Go ahead, judge. Why are we even limited to those two issues? It seems to me that traditional Article III standing is alleged here. Basically, what this complaint says is, I tried to get work for a couple of years, and I couldn't, and it's your fault. So why do we even need sort of all of this convoluted discussion of intangible this and that? Your Honor, at the Supreme Court, the arguments have channeled on their way up through appellate review. Well, I understand that, but we have to – standing and jurisdiction are issues that we have to review de novo, and we're obliged to exercise jurisdiction as a court if we haven't. And so regardless of how the parties have framed the issue, don't we have an obligation to just look at the complaint, look at Article III, and determine whether or not there is standing? That is not an argument we have pressed. The court can exercise its judgment to reach any issue of the court. Well, didn't the Supreme Court tell us upon remand to examine whether or not a concrete injury has occurred in this case? That is the way the question was framed, yes, Your Honor. Well, why don't we answer the question the way it was framed? I would be pleased to. And we believe the two answers that I set forth out front answer that question in two independent ways. Well, what is the concrete injury specifically? This is putting aside particularization. I'll leave that one aside. What is the concrete issue that – concrete injury that was alleged in your complaint? Concrete injury. The parties of the court have used three interchangeable words, interest, injury, and harm. I think they have all been used in the same place. But we believe the concrete injury are the economic and professional and reputational concerns that led Congress to enact the statute. Well, you have to have more than concerns. You have to be able to say that because of this report that put out by Spokio, I applied – having applied for a job was turned down for a job because of this injury that was caused by Spokio. Can you say that? We have not said that. I respectfully disagree with Your Honor that that is the question that is asked by the remand. That would be another way of simply saying that Mr. Robbins must show tangible harm. And if the Supreme Court decision said one thing, it said intangible injuries, which are statutory rights, are no less concrete than tangible injuries. But it never said that tangible ones won't do. I'm really – I'm very surprised to hear you walk away from that because certainly some – But I don't take them to mean that tangible harms aren't good enough. Nor do I. But I have to be candid with Your Honor and say that we did not press the argument before the Supreme Court. No, I understand you didn't press the argument. But the complaint says I looked for work during this whole period, I didn't find it, and it's your fault. And plus, I had emotional distress damages, too. But why isn't that sort of the beginning and the end of the whole case? Had we pressed the argument, it could be another case. And I respect Your Honor's view that that would be the – And you don't think that we have an obligation to determine all aspects of jurisdiction, whether you argue them or not? What I would say, Your Honor, is we have offered a theory of standing which we think easily satisfies the remand question from the Supreme Court. Well, suppose you're wrong about that theory. Then what do we do? If we – I'm only speaking for myself and asking questions, not for the panel, obviously. But let's suppose we disagree with you on the statutory standing. Are we supposed to just walk away from it, even if we think there's an allegation of regular old-fashioned standing? I would not advise the Court on what it should do. All I can tell the Court, again, is that we have not pressed the argument, and we would like to press forward on the argument. We have made – we think we really do have a straightforward case for standing under the Supreme Court's decision in Spokane, but we really think this is among the easier cases. Mr. Consovoy, may I ask you a comment? The intangible injury here is economic and reputational concerns. I have difficulty understanding how you have alleged any reputational damage, because if I understand your allegations – and correct me if I'm wrong – you're alleging that the Spokane people said about your man that he was married, professional, had children, had a high income level, and those normal – outside of certain areas that were illiquor in – those are not defamatory per se, correct? Xavier states that common law may not have been defamatory per se. Next step. In order for there to be a reputational injury, don't we have to know what his reputation is and how these representations harm him in his economic reputation and pursuits? For instance, you say that being wealthy and being married indicates that he's going to ask for a higher salary and that he cannot move from place to place and that inhibits his employment prospects. But we don't know if Mr. Robbins is a man who is indeed married and has the ability to move around. We don't know those things. If his reputation now is that of a deliveryman or of a plumber who wants to stay at a low-end, low-wage job, and end at one place, that's one thing that this would hurt him. But don't you have to allege what his reputation is in order to show that these statements are of damage to his reputation? No. If I could explain why we want this. The inquiry under Spokio is not about the individual. It's about the type of harm being alleged. The Supreme Court made that clear at the end of its opinion. So the question before this Court is, are the types of allegations that are at issue here, meaning inaccurate information about your personal wealth, your age, your employment history, and your marital status, are those the types of harm that go to the heart of the statute? And we know this because the Supreme Court said once you meet that test, no additional showing of harm beyond that which Congress identified is necessary. Those kinds of questions, Judge Beah, are really another way of saying what Spokio argued at the Supreme Court and lost, which is some showing of tangible harm is required. Those are all excellent examples of tangible harm. But we're dealing here today with intangible harm. And we know this further, if I might. Well, let's go back to Lujan. You're not ignoring Lujan, I assume. No, no, we think this falls directly from Lujan. Lujan says, Your Honor, Lujan says, First, the plaintiff must have suffered an injury in fact and the invasion of a legally protected interest, which is concrete, exactly articulated. So what is the injury in fact that occurred here? And the key words in that phrase are legally protected interest. The interest must be concrete. And what the Supreme Court was saying is, just like constitutional rights are concrete, the Court used two constitutional examples in its opinion. Now, I'm aware of the rights, but I'm still struggling to find out where is the injury here that has been alleged in your complaint. So if the interest is concrete, the legally protected interest, and you allege that your statutory right to that interest has been violated, you have a concrete interest so long as it is not divorced from the statute. So ZIP Codes, while being a technical violation of that concrete statutory interest, are so far divorced from it that they're not actionable. But you have made your point. We could all imagine an idiosyncratic case where someone might be harmed by a ZIP Code. But the Supreme Court ruled it out on a class-level basis, on a type basis, which is not our word. That is the word from the Supreme Court's opinion in footnote 8. It said it drew no judgments as to other types of harms. And it could only work on the type basis. Because whatever rule this Court comes up with for this interest is going to apply to constitutional rights as well. Free speech and free exercise were examples the Supreme Court used to identify what is an intangible harm, what is a violation of an intangible right. Statutory rights, Lujan says, the source of the right cannot be decided. So I would point you directly to the statute. So in the statute itself, the definition of consumer report in Section 1681A.D.1, and you'll bear with me, is any written, oral, or other communication of any information by a credit reporting agency that bears on the consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living. So the question before this Court is, are these types of allegations, allegations as to inaccuracies to your employment history, to your education level, to your economic health, to your age, and to your marital status, are they tethered or are they divorced? Because the Supreme Court's zip codes, divorced. Or are they tethered to the interest that motivated Congress to protect the interest by statute? And if you can show that, which we believe we easily can, no further showing other than the one Congress identified is necessary. And I would point the Court also to Justice Thomas' concurring opinion. I understand it was a concurring opinion that no one else joined, but what I think is really important about it is not who joined Justice Thomas, but who Justice Thomas joined. Justice Thomas is well aware of concurring the judgment versus joining an opinion. And his opinion, which even Spokio agrees is foursquare with our theory of the opinion, he joined it. He would not have joined the opinion if he shared Spokio's view of what the Court did. Justice Thomas was quite clear that once Congress has done its job, once Congress has identified a concrete, legally protected interest, that is all that is required. We also know that, Your Honor, from the FOIA cases and from the Aiken case. In a FOIA case, which is an intangible, concrete interest, again, Justice Alito's opinion for the Court makes that clear. It's not a tangible interest. It's a statutory right to records. Once you show you have the statutory right to those records, no other showing, and I don't mean to be a broken record, but I do think this is the key language from the opinion, no other showing other than the one Congress identified is required. A person making a record request doesn't have to show that they need the record for some personal purpose. That without the record, they would be harmed in some tangible, personal way. It is the statutory right, the Supreme Court has found it to be concrete. No other showing is required. And beyond that, there really is no other basis to deny our claim. If any sorts of harms meet this test for intangible, concrete harms, it would have to be the categories of information we're talking about here. Congress was clearly motivated by a concern that employment history, educational history, and categories like that go right to the heart of what was going on in 1970 when the statute was passed, that credit reporting agencies were issuing reports that were harming people. But the problem was, and this is what led to the amendments in 1996 that allowed for statutory damages, it was enormously difficult to prove or measure for the reasons Judge May identified, and common law courts and legislatures from the beginning of the republic have the right to waive the duty to show actual harm in cases like that. Damage may be presumed. And without your position that statutory damages provide the concrete lesson, what is concrete? No, they are the remedy. They provide the remedy. But the question is, is the legislature within its Article I power to do so, and does it violate Article III by requiring them to make no further showing? And the answer is no. We know that from copyright. We know that from various areas of the law. I'm sorry. No, I'm just waiting for the opportunity. What I'm trying to sort out is we've ruled in your favor the last time you were in front of us and that Supreme Court vacated our decision. Where did we go wrong as you interpret the Supreme Court's analysis? As I interpret their opinion, they believe this court, what they said, elided the concreteness requirement that emerged, particularization, which is not in dispute here, that it's his credit report that was inaccurate, but didn't examine whether that violation caused a concrete intangible harm. And the Supreme Court also said it offered no comment on whether this court got the, you know, whether it was right or wrong, or offered no comment on what might be the answer on remand. It simply wanted this court to take a fresh look to see whether the right Congress created, and Congress has a role here. The Supreme Court said Congress's judgment is instructive. Faye, back to your point. If it was about Mr. Robbins' personal reputation, there would be no reason why Congress's judgment would be instructive. There would be nothing for it to be instructive about. The focus of the court should turn, must turn its lens, its focus to what Congress did and whether it created a concrete intangible right. I reserve the balance of my time. Do you want to keep it 5? Thank you. You may do so, counsel. That's fine. We'll hear from the other side. Thank you, Your Honor. May it please the Court. Andrew Pincus for Eppley Spokale. I'd like to start where my friend, Mr. Consovoy, you did. I think it's important to separate interest from injury, because as several members of the Court have said, the focus is on harm and injury, not on interest. Take the First Amendment example that Mr. Consovoy used. Surely we all agree we have a free speech rights and interests, but one can't assert a free speech claim unless the government action has harmed the individual by preventing him or her from engaging in that right. So there has to be harm in order to get into court. And so I think the question here, and starting with, turning to Judge O'Scanlon's question, what did the Supreme Court think? And I think what the Supreme Court was saying was, first of all, merely pleading the elements of a cause of action does not automatically establish standing merely establishing a statutory violation. There has to be harm. There has to be concrete harm, as the Court said, and concrete harm is real. So there has to be something in the real world. And I think that's... That takes me back to my question, which I would appreciate your answer to. Our job is to determine whether or not there is standing, that our opinion was vacated. So we're starting over. And the question in front of us is whether the district court properly or improperly dismissed the case for lack of Article III standing. So it appears to me that our job is to look at the complaint and determine whether it states enough facts to establish standing under Article III without regard to the niceties of the principles that the lawyers are interested in having us develop for future cases or for whether they can certify a class and interests that are not our job. So why isn't it enough that he has said, I tried to get work, I was unsuccessful, and it's your fault? Now, whether he can prove that is an entirely separate issue, but why isn't that enough for his standing? Well, I think that is certainly a question that the Court can address. It's the basis for the district court's dismissal was its conclusion that the allegations of the complaint didn't show harm or a risk of harm. So it seems to me that... Well, I think a fair reading of it is that I tried to get work, I couldn't, and it's your fault, and also I had emotional distress damages because I couldn't find work. That's pretty concrete and it's pretty personal in particular. So, again, without regard to whether it's provable, why isn't that enough? Because I think what's missing, obviously the allegations have to allow a plausible inference for the it's your fault part of the equation. Okay, that's not about standing. Yes, it is. It's about traceability. No, I think it is, Your Honor. I think it is because obviously standing has to do with the harm, has to be traceable to the defendant's acts. That's another element of the standing equation. And so here, I think if you look at paragraphs 34 and 35 of the amended complaint, which are really the operative paragraphs, they say nothing about how the information on Spokio had anything to do with the plaintiff's inability to get employment. In fact, they are basically two separate statements. There were inaccurate facts about me. I couldn't get employment. And then there's a conclusory statement that defendant has caused actual harm to plaintiff's employment prospects, but no specifics about how that's happening. But that's, there are other allegations in the complaint about how employers used this information widely and so on and so forth. And so if you draw all the inferences in their favor, as we're required to do, there's at least a scintilla of traceability. Well, respectfully, Your Honor, I think the way the Supreme Court has interpreted it, and again, it bluntly, the need for plausibility, it's awfully hard because there's really nothing here about these employers. There are some general statements about Spokio, but when it comes to these specifics, there's nothing specific about any employer that the plaintiff either contacted or could have contacted or might have contacted. And we also have the problem that these facts on their face, because they show the plaintiff in a more favorable light, it's hard to say, standing alone, without some indication that someone looked at them and there was adversity, they provide a plausible inference. But let me also add why I think my friend doesn't really want to go down this road, because the real world fact, as Your Honor alluded to, is this is about classability. And so as soon as that's the basis for upholding standing, the classability goes down the drain. So I think that's the reality of what's going on. And obviously, you know, from Spokio's perspective, if that's the basis on which the claim is upheld, then it's impossible to. I'll go with it again. You're saying that if he alleges some concrete facts as to his employment, then he disqualifies himself as a class representative. If standing is upheld based on the specifics about Mr. Robbins and what happened to him, as opposed to some general decision about inaccuracies generally, then each member of the class will have to establish standing based on that approach, and that will be an individualized issue that will make it very hard for them to certify a class. He's alleged a general reputational damage by publication of false information. That would be an allegation that goes across the whole class. But if the basis for harm for... Judge Graber's, I think, hypothesis is that the basis for upholding standing here would be you injured my employment prospects by this information. If that's the basis, then every other class member would have to show some kind of injury to their employment prospects or to some other protected interest, but it would require a person-by-person decision, and that's not what the goal of a class action. That would make it impossible to have a class action, so I think that's the sort of background. We don't have that issue in front of us at the moment. The class ability, no. But I just think it's a reality that's around the case. I'd like you to respond to Mr. Consovoy's argument about this intangible harm. Maybe you could help me sort it out because I'm not sure I followed that. I'm still stuck on Lujan at the moment. I think Lujan is an important case, especially Justice Kennedy's concurrence, because what Justice Kennedy said is that Congress can elevate, can take a de facto injury, some injury that's real, and make it actionable. And so the question, I think, is has Congress done that? Has Congress said, we were just talking about the ordinary standing rules, the otherwise applicable rules. If we don't look at something special that Congress might have done in the Fair Credit Reporting Act. So the argument of the plaintiffs is Congress did something in the Fair Credit Reporting Act to make actionable in federal court an injury that otherwise wouldn't meet the rules. And so I think to do that, you have to first look at. Well, I'm not sure that it wouldn't otherwise meet the rules, going back to the way the case has been argued, in the sense that Judge Baio was discussing, which is even in common law, one had the right to have the truth told about one in public. And, you know, you can't go around just lying about people to their shame and detriment that's, you know, it's actionable. So why doesn't it fall within the otherwise actionable category? Well, as we discussed in our briefs here and even more detail in our briefs in the Supreme Court, a common law defamation required proof of actual harm, except for a very small category of defamatory statements, basically infectious disease, total inability to engage in one's trade or commerce, or something like that. They were a very small category of things that were actionable, but would have proof of actual harm. Everything else required actual harm, which is what we're talking about. So I think that's the problem with that analogy. But if I can turn back to the Fair Credit Reporting Act, why can't Congress enlarge upon what the common law courts thought was defamatory, per se, by saying any false information about the general reputation of a consumer is similar to defamation per se. It doesn't have to be defamation per quod, per se. Is that what they did here? Well, I think Congress could do that within limits, as the Supreme Court said, but it's exactly what they did not do here. And I think it's important to look at the Fair Credit Reporting Act and how it was enacted. When the statute was originally enacted, the private cause of action required proof of actual harm. There were no statutory damages. So all of the regulatory provisions in the Fair Credit Reporting Act, as it was originally enacted, were only actionable by a consumer upon proof of actual harm, because the only recovery was actual damages. So, clearly, the original enactment of the FCRA didn't do just what Judge Beyer was saying, which is to expand the universe, because Congress created a private cause of action with the limits we now understand. So then the question is, when Congress added the statutory damages provision in 1996, is that evidence that Congress did something different? And we think it's not for two reasons. First of all, excuse me, as the Supreme Court said in the Doe case, which we quote in our brief, and is true in the copyright area and a number of other areas where there are statutory damages, statutory damages are typically thought of as a device for relieving the plaintiff of the burden of proving the amount of harm, not of proving actual harm. So, simply the addition of statutory damages really can't provide a basis for saying Congress did what you said, Judge Beyer, expanded the universe, because it's just as likely that they relieved the plaintiff of the burden of proving amount of damages in this area where it's sort of complicated. The second problem with relying on the statutory damages addition is Congress did not just provide statutory damages for violations of the provisions of the FCRA that relate to inaccurate statements. It is an across-the-board enactment, statutory damages for every willful violation. So, the 1996 Act can't be taken as Congress looking at inaccuracy and saying, in the consumer context, any inaccuracy is something that should be actionable, so we're going to provide statutory damages for that reason. All willful violations give rise to statutory damages. So, for that reason, I think the whole theory that the FCRA did something to elevate a previously non-actionable intangible injury to actionable status just doesn't hold water. It's also important, I think, to say that in the Supreme Court's own opinion, Mr. Consovoy referred to the zip code example, the Supreme Court recognized every inaccuracy isn't going to be enough to satisfy Article 3. And in footnote 8, which is attached to that zip code sentence, the court said whether other false information is in the zip code category or not is something for it to be considered on remand. And we think what that meant is undertaking the inquiry that Judge Beyer was basically hypothesizing at the beginning of the argument, which is, does the complaint allegations show that these inaccuracies, in the words of the Clapper case that the Supreme Court cited in this case, create a risk of certainly impending harm? That's what's required. I think this brief from the CFPB seems to be a pretty good argument as to why the types of inaccuracies here are not on the zip code end of the scale. What's wrong with their analysis? I think what's wrong with their analysis is there's no basis for saying you sort of proceed on an inaccuracy-by-inaccuracy basis and you make a categorical judgment. But didn't the Supreme Court do that? They said we can't imagine that zip codes matter. A lot of your stuff probably does matter. And so why doesn't this other stuff like your marital status, your work history, the basics about you matter? Well, I think two answers to that. First of all, for the categories to matter, you'd have to find some judgment in the FCRA by Congress that they do matter. And for the reasons that I've just explained, Congress didn't in the FCRA say we've looked at some categories and not others. It didn't do anything to elevate, to create, to expand the categories of injuries that give right to suit because of the steps in the legislation that I mentioned. And there's certainly nothing in the statute. Mr. Consovoy read a list of things that are in the definition of consumer report, but that says nothing about Congress making a determination that some inaccuracies are more important than others. There's just not that line. So you think that we aren't allowed to do that under what the Supreme Court told us? It seems to me that what you're saying is everything has to go in the zip code basket. No, I don't think it does. I think everything has to go in the basket of, just like my free speech example, is there something in the allegations here that provides a basis for a plausible inference that this inaccuracy harmed this person? In many cases... Well, that gets back to my original question about losing a job. Yes, but I think in some cases the kinds of inaccuracy, if it's the credit report said this person was arrested and they never were, I think that inaccuracy by itself probably gives you a pretty plausible inference that there could be harm. Again, if you met the second part, which is can you show that somebody actually looked at this or would have looked at it and it would have affected you, it seems to me there are these two questions in the risk of harm category. First of all, is this inaccuracy something that gives rise to a certainly impending risk of harm? And then are there allegations that indicate that somebody who had the power to act with respect to the plaintiff either did look at it or there's a significant risk that he or she would? Here we don't have either of those things, and I think the problem is that these categories really don't by themselves, married or single, it's hard to say that that has such a risk of inaccuracy that you can just say, as always, if you make a mistake about someone's marital status, that has to be something that's false. I think that's much harder to do. The level of compensation would make him ineligible for a lower-paying job, correct? I'm sorry, Your Honor? The level of compensation, the level of wealth, would make it look like he would not accept a lower-paying job. It could, depending on the facts about him, which we don't know. It may be, I mean, that's why I go back to, it seems to me, as I say, some things. Should he have leave? What about leave to amend to supply us with the facts about him? I think that would be the appropriate course here. It seems to me that it's quite reasonable to say there are, in fact, here that provide a plausible inference that there was a risk of, the proper level of risk of concrete harm, but given that the Supreme Court decided this case and this Court is going to say what the standard is, it would be quite reasonable to say that the plaintiff gets a chance to amend to meet whatever that legal standard is. Can you still do that at this stage? Yes, Your Honor, and you can. The case was dismissed. It was here on an appeal from a motion to dismiss. It's vacated and remanded, so this Court could say, change in the law. Spokio was decided. We've now interpreted what Spokio requires in terms of allegations, and we're going to remand to give the plaintiff another chance to meet that standard. Let me go back to this question of is there something in the FCRA or in the Supreme Court's opinion that sort of indicates that there's some basis for looking not at what these inaccuracies meant for this plaintiff, but sort of categorically. I think Justice Thomas' opinion was a separate opinion. He did join the majority. He wasn't a critical vote for the majority, so I think it's awfully hard and would be quite unusual to interpret a majority opinion by reference to what's in a single justice's concurring opinion. With respect was a nice try. Yes, Your Honor. And an especially nice try because I know that Mr. Consovoy clerks for Justice Thomas. With respect to FOIA, the injury there, as we talked about in our briefs, and as the Chief Justice wrote in a law review article that we cited in our briefs in this Court, the injury is the denial of the request for information. That's what makes it, creates a particularized concrete injury for that particular person that gives them the ability to sue under FOIA. Unless the Court has any further questions. Thank you. No further questions. Thank you, Counsel. Mr. Consovoy, you have some reserved time. Thank you, Your Honor. Three briefs. First, what Spokio is asking here from Congress is what I would call an Article III bullseye. If Congress decides to protect against reputation and defamation more broadly than Article III would allow, they forfeit the right to protect it at all. Now, I would point this Court to the preemption provision in this statute, which Spokio has never been able to address. The preemption provision of this statute at 1681H says, no consumer may bring an action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to reporting of information against any consumer reporting agency. Now, it is lost on me how there could be no connection between the common law rights of reputation and defamation per se in the Fair Credit Reporting Act. If the Fair Credit Reporting Act preempts common law claims of defamation and reputational harms, there seems to be at least well more than is necessary to satisfy what the Supreme Court has said about the relationship between the common law and statutory rights. Take the False Claims Act as a prime example, which is the Supreme Court's decision in Stevens. There is no argument that a modern day relator under the False Claims Act looks exactly like a informer in 1789 or the Sprint case. There is no way that a payphone aggregator perfectly replicates a common law assignee of a contract right. In fact, the Chief Justice dissented, saying that there was no connection. What the Supreme Court said is, legislatures have rights under Article I to expand upon the common law and to adapt it to the modern era, and it does not forfeit a connection to the common law by doing so. The parties agree that at common law, you have the right to presume damages with no showing of tangible harm for certain allegations as to your trade or profession. Congress accrues a judgment that in the modern era, inaccuracies such as this in your credit report are exactly the kind of injury to your profession or trade that need statutory protection. And I would turn Judge O'Scanlan back to the law. And I think my good friend gave the case away when he said, look at free speech. Because please look at free speech. In a free speech case, here's what a court would never ask. Show me economic harm. Show me physical injury. Show me psychological harm. Those things would be for a remedies question, but not for injury. For injury, it is the invasion of the legally protected interest in free speech. Justice, can you point us to anything in the majority opinion that would support that analysis? Yes, I'll point you to three or four things. First, the court said at the outset that statutory rights can create intangible interest. It said we have long been okay with intangible interest. See free speech and free exercise. It's the first analogy the court draws as to explain what an intangible interest looks like. It looks like free speech. And statistically, we know from Lujan, which the court cites repeatedly, that there is no basis for discriminating on intangible rights between the source of the right. That's what's troubling me. I can't bridge the gap between this intangible rights concept and what Lujan is saying. I do. So for me, and I know this is, I find this, you know, difficult. The word, the jargon gets in the way. I think of a more fundamental question, which is, it's the legally protected interest that gives you standing. Now, constitutions create legally protected interests. The common law can create legally protected interests. But so can statutes. And the question this court needs to decide is whether this statute creates a concrete legally protected interest or not. And what the Supreme Court said, the Supreme Court could have drawn the line at that level. We would have been pleased if they did. But they said not quite. They said not every procedural violation of a statute is going to impair that interest. So you have to go one level below that. That's why Your Honor said zip codes versus other issues. And type. Mr. Pinker says he doesn't know where we're getting that from. The word type is in the Supreme Court opinion. Analyze this on a type-by-type basis. Well, what about this passage? On the other hand, Robbins cannot satisfy the demands of Article III by alleging a fair procedural violation. A violation of one of the Act's procedural requirements may result in no harm. It may. But it also may not. The question is, is this a fair procedural violation? Or in the words of Lujan, I want to ask Ron to go back to Lujan. Or is it a procedural violation that impairs a separate concrete interest? So does this procedural violation impair the interest and reputation and creditworthiness that are behind the Fair Credit Reporting Act? If the court thinks they don't, if they think if the court thinks inaccurate information about your employment history, your marital status, your age, your economic health, I don't know. I don't know. Is creditworthiness impaired by the statements made inaccurately by this report? Yes, Your Honor. So I don't mean to fight the hypothetical, Your Honor, but I do think you're focusing on the wrong question. It's not whether these particular statements, it's whether inaccurate information of this type impairs the interest that is protected by the Fair Credit Reporting Act. And we know that from the zip code example. We can all imagine a case where a zip code error would harm a particular individual. And if they came to court, I think they'd have a problem with this opinion. The Supreme Court said zip codes are a bare violation. Whenever the court draws a line, it's going to be a little bit over-inclusive and under-inclusive. I think that's the nature of drawing on a tight basis. But that's the line. Your position is it's not necessary for him to have alleged a particular injury to himself, a concrete injury. But it's not exactly what Lujan tells us is going to be particularized. Lujan says, as long as the legally protected interest is concrete. And what Smokio does is elaborate on that. It says, and it tells the court, the question was, how do we know when a statutory violation invades a legally protected interest? They say, look at the type of harm and see what the statute is trying to address and see whether there's a good connection between the violation alleged and the statute's interest. That's what they did on zip codes. That's what we think the court should do. If we were to follow the suggestion made by your opposing counsel that perhaps we ought to remand to allow the district court to give way to amend, would you be able to amend your complaint with respect to this individual as to a direct connection between his applying for a job and being told, no, we read Smokio, you can't have the job? We'd have to look at it, Your Honor. I couldn't answer the question at the podium today. But we would respectfully ask the court to not require that. We really don't think it's necessary. It would be invading the province of Congress to say, when the Supreme Court said, no additional harm beyond the one Congress identified is required, for the court to say, no, some additional harm beyond the one Congress identified is required. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and the court will adjourn.
judges: O'scannlain, Graber, Bea